UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:19-CV-22060-MORENO/LOUIS

ARKEYVEYIA BENT,

    Plaintiff,

v.

FT. LAUDERDALE HOSPITALITY,
INC. d/b/a RED CARPET INN,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

**THIS CAUSE** comes before the Court upon Sina Negahbani's Motion to Enforce Charging Lien (ECF No. 36).[1] This Motion has been referred to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, by the Honorable Federico A. Moreno, United States District Judge, for a report and recommendation (ECF No. 32). The Court held an evidentiary hearing on the dispute on May 7, 2020.

This is a dispute between Plaintiff Arkeyveyia Bent and her former attorney Sina Negahbani regarding payment of his fees for work incurred while representing Plaintiff in the underlying employment discrimination action. After four years of representing Plaintiff, Mr. Negahbani withdrew from the case before the case settled. Mr. Negahbani now seeks payment of his fees, arguing that he is entitled to collect attorney's fees because he withdrew from the case

---

[1] Filed as a Memorandum of Law in Support of Charging Lien in response to this Court's order requiring supplementation.

1

with cause, due to Plaintiff's conduct, which made continued representation impossible (ECF No. 36). In opposition, Plaintiff, by and through new counsel, argues that Mr. Negahbani forfeited his right to collect his fees because he voluntarily withdrew from representation prior to the contingency occurring (ECF No. 38). Following an evidentiary hearing, I found the evidence admitted supported Mr. Negahbani's claim that Plaintiff's failure to participate in the prosecution of her case, including failure to communicate and provide documentation in support of her claims after the lawsuit had been filed, caused Mr. Negahbani to withdraw; consistent with that finding, I recommend that Mr. Negahbani's charging lien be enforced and he be awarded fees in *quantum meruit* in the amount of $ 9,343.50 and costs in the amount of $500.

**I.   BACKGROUND**

On November 15, 2015, Plaintiff and Mr. Negahbani entered into a contingency fee agreement. Over a lengthy initial meeting, the parties discussed the factual basis of Plaintiff's claims and Plaintiff completed an intake form. Plaintiff provided facts about her claim against her former employer, representing on the intake form that while she was pregnant, she had been penalized for leaving work early to attend doctor's appointments despite receiving permission from her supervisor to do so and was ultimately terminated. Plaintiff wrote on the form that she had documents in her possession which supported her claim, including a letter from her supervisor.

Mr. Negahbani filed a charge with the Equal Employment Opportunity Commission ("EEOC")[2] on her behalf and represented Plaintiff through the EEOC's proceedings, which included a mediation and settlement negotiations with Defendant. Plaintiff failed to personally appear at mediation, and no pre-suit settlement was reached.

---

[2] Prior to filing the civil action for employment discrimination, Plaintiff was required to exhaust her administrative remedies and file a charge with the EEOC. *See Ramon v. AT & T Broadband*, 195 F. App'x 860, 865 (11th Cir. 2006) (recognizing that in order to prosecute this action, Plaintiff was required to first exhaust his administrative remedies by filing a charge of discrimination with the EEOC).

Following the EEOC's issuance of a Right to Sue Letter, Plaintiff and Mr. Negahbani discussed filing suit in state court. After months of unanswered contacts to Plaintiff requesting that she submit the documents supporting her claim, and warnings that without Plaintiff's cooperation he would not be able to prosecute her case, Mr. Negahbani filed a motion to withdraw from representation. Mr. Negahbani's motion was granted and he filed a notice of charging lien with the state court. Plaintiff proceeded with new counsel. The case was transferred to this Court and eventually settled.

Once the litigation was transferred to this Court, Plaintiff filed a Motion to Extinguish Attorney Charing Lien (ECF No. 10), arguing that Mr. Negahbani's charging lien should be denied as he withdrew voluntarily from representation without cause and thus forfeited his compensation. The Court denied Plaintiff's Motion (ECF No. 12). In the ensuing months, Plaintiff reached a settlement agreement with Defendant that it noticed with the Court (ECF No. 25), upon which the Court dismissed the complaint (ECF No. 28), noting it would retain jurisdiction for three years, including for adjudication of the charging lien. Attorney Negahbani moved to compel responses to his requests for production, demanding disclosure of the amount of settlement, which he argued was relevant to his charging lien (ECF No. 29). The Court denied the motion to compel, explaining that the documents related to the Plaintiff's settlement agreement were not discoverable for adjudication of counsel's charging lien; in the same Order, the Court referred the adjudication of the charging lien to the undersigned (ECF No. 32).

## II. EVIDENTIARY HEARING

At the evidentiary hearing, the Court received both documentary and testimonial evidence. Mr. Negahbani elicited testimony from Plaintiff Bent and from Ali Leiva, a paralegal from Mr. Negahbani's law firm who worked on Plaintiff's case; and admitted several exhibits including

documents relating to Plaintiff's EEOC charge and investigation, email correspondence between Plaintiff, Mr. Negahbani, and Ms. Leiva, Mr. Negahbani's time sheets, and the fee agreement. Plaintiff did not present any witnesses or admit exhibits at the evidentiary hearing. The following is a summary of the evidence presented and the Court's findings thereon.

During her testimony, Plaintiff acknowledged that pursuant to the Parties' agreement, counsel incurred the financial risks of pursuing the action, and likewise, agreed that for this reason the contingency fee agreement required her cooperation in the prosecution of the case. This was perhaps the only point on which Plaintiff agreed with Mr. Negahbani.

Plaintiff denied that she had failed to produce documents requested by Mr. Negahbani and Ms. Leiva, his paralegal, which Plaintiff had previously identified as helpful to her claim. Plaintiff testified vaguely that she had provided "everything" directly to Ms. Leiva but could not definitely identify what documents she provided, when, or how. Plaintiff claimed she dropped off paperwork at counsel's office, and/or that she faxed it, and/or that she tried to email it.

The failure to produce documents was not an insignificant or technical failure on Plaintiff's part. As noted above, Plaintiff had assured counsel at their initial interview that she had witnesses who would corroborate her version of events and a letter from her former supervisor that would help prove her claim of discrimination. When Defendant provided its version of events in response to the EEOC investigation, it not only contradicted the account Plaintiff had described to attorney Negahbani, but was supported with written witness statements from Plaintiff's former co-workers, who described Plaintiff's tardiness, failure to appear, and abandonment of her post. One of the witness statements was authored by the witness Plaintiff had indicated would corroborate her own account.

With their ability to prove the claims hanging in the balance, Mr. Negahbani impressed

upon Plaintiff the significant need for her to produce to him the letter she had described on the intake form from her former supervisor. While a series of emails admitted at the hearing show that counsel and his paralegal repeatedly beseeched Plaintiff to provide the documents requested, Plaintiff did not credibly refute the inference the writings naturally support: that Plaintiff never produced the evidence to counsel.

Plaintiff similarly denied that she was told that her attendance was mandatory at the EEOC mediation, claiming she was told after the mediation had taken place that she need not attend. This contention is contradicted by Plaintiff's own testimony that Mr. Negahbani told her he was going to cancel the mediation because she could not attend and was further undermined by a letter of authorization she executed in advance of the scheduled mediation, seemingly in an effort to avoid personal appearance (ECF No. 50–4 at 195–96).

With respect to her unresponsiveness to emails from Mr. Negahbani and Ms. Leiva, Plaintiff denied receiving many of the emails presented to her on direct examination. Plaintiff also testified that upon receipt of some of the emails, she promptly called Ms. Leiva to provide a response. She attributed missing phone calls to the fact that at one point she changed her phone number and testified that she had called Mr. Negahbani's office and left messages with her new contact information.

Plaintiff also offered her perspective of the events that led to Mr. Negahbani's withdrawal, testifying that the relationship soured after the EEOC issued the Right to Sue Letter, which permitted the filing of the lawsuit. Plaintiff testified that she contacted Mr. Negahbani to inquire about the next steps and learned from counsel that the filing of the complaint would necessitate a $500 filing fee. Plaintiff testified that she could not afford the filing fee and asked if she could pay

5

the fee in installments.[3]

Ms. Leiva was also called as a witness and testified that she never received documents from Plaintiff supporting her claim despite her and Ms. Negahbani's repeated requests. This testimony was supported by copies of unanswered correspondence (ECF No. 50–4). Ms. Leiva also testified that she confirmed Plaintiff's email address to ensure she was receiving correspondence.

Ultimately, after a series of contacts seeking payment from Plaintiff as well as the documentation promised throughout the representation, all of which went unanswered, Mr. Negahbani warned Plaintiff that without her cooperation he could not prosecute the case and would be forced to withdraw. However, this warning was not sufficient to prompt Plaintiff's cooperation, and finally counsel moved to withdraw.

### III.    DISCUSSION

#### a. Legal Principles Regarding Charging Liens

Federal courts, although they recognize no common-law lien in favor of attorneys, give effect to the laws of the states in which they are held. *Zaklama v. Mount Sinai Medical Center*, 906 F.2d 650, 652 (11th Cir. 1990) (recognizing that the rights and obligations of parties to a contingency fee agreement are governed by state law). In Florida, a charging lien is a mechanism that permits an attorney to enforce an equitable right to collect costs and fees owed for legal services secured by the judgment or recovery amount in the lawsuit. *Aldar Tobacco Group, LLC v. American Cigarette Co., Inc.*, 577 F. App'x 903, 906 (11th Cir. 2014). There are four requirements to impose a charging lien: (1) an express or implied contract between the attorney and client; (2) an understanding between the parties that payment to the attorney is dependent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or dispute

---

[3] There is no evidence that under a payment plan or other arrangement, Plaintiff made any payments towards the $500 filing fee.

6

the amount of the fee; and (4) a timely notice of the request for the charging lien. *Aldar*, 577 F. App'x at 906. To perfect a charging lien, the lien must be filed before the lawsuit has been reduced to a judgment or a settlement agreement has been reached. *Vazquez v. Moran Foods, LLC*, No. 15-62109-CIV, 2017 WL 11219667, at *1 (S.D. Fla. Apr. 13, 2017).

Here, Mr. Negahbani and Plaintiff had a valid contingency agreement, which made payment to Mr. Negahbani dependent on his obtaining a favorable settlement or judgment (ECF No. 50–7), that the contingency was not reached while Mr. Negahbani represented Plaintiff, and that Mr. Negahbani perfected his lien by filing a notice of charging lien before the Plaintiff and Defendant reached a settlement agreement.

Relevant to this Motion, under Florida law, an attorney's entitlement to compensation when a contingent fee contract is prematurely terminated by discharge or counsel's withdrawal generally depends on whether the withdrawal or discharge was with or without good cause. *See Carbonic Consultants, Inc. v. Herzfeld & Rubin, Inc.*, 699 So. 2d 321, 323 (Fla. 3d DCA 1997) (citing *Rosenberg v. Levin*, 409 So. 2d 1016 (Fla. 1982)). When an attorney voluntarily withdraws from representation of a client before the contingency occurs, the attorney forfeits all rights to compensation unless the client's conduct makes the attorney's continued performance either legally impossible or would cause the attorney to violate an ethical rule of the rules governing the Florida Bar, in which case the attorney may be entitled to a fee in *quantum meruit* when the contingency occurs. *Faro v. Romani*, 641 So. 2d 69, 71 (Fla. 1994).

b. **Mr. Negahbani is Entitled to Fees in *Quantum Meruit***

Mr. Negahbani argues that he did not forfeit his right to collect fees because Plaintiff failed to fulfill her obligations under the representation agreement by failing to submit evidence in support of her claim, which she had previously represented she had; compounding the difficulty,

Plaintiff was unresponsive to his communications thereby frustrating all of Mr. Negahbani's efforts to prosecute her case. Plaintiff denies that her conduct rendered continued representation impossible and her opposition is largely predicated on an argument that counsel's motion advances the wrong legal standard.

Consistent with the evidence advanced at the hearing and the undersigned's assessment of the respective witnesses' credibility, I accept Mr. Negahbani's explanation that Plaintiff was consistently uncooperative and unresponsive, and that her failure to cooperate in the prosecution of her case made continued representation impossible, particularly after the case was filed in state court. In assessing Plaintiff's credibility, I have considered the extent it is corroborated or contradicted by other evidence, her ability (or inability) to recall specific events or facts, her bias and interest in the outcome of these proceedings, and her ability to provide clear answers to the questions posed. Taking those factors into account, Plaintiff has at least some bias against counsel's ability to recover his charging lien, as the relationship ended acrimoniously when he withdrew. Her testimony was, as noted above, significantly contradicted by the contemporaneous emails between the parties. Moreover, if Plaintiff's account of the relationship was accurate, she should have had grave concerns regarding counsel's competency, as she claims she always responded to his calls and requests for documents, yet the record shows counsel repeatedly renewed those requests. This was not the case, as by her own account, Plaintiff did not have an issue with counsel's competency and wanted him to continue representing her. Plaintiff's testimony strains credulity and I have afforded it very little weight in my findings.

Plaintiff's testimony is further undermined by Ms. Leiva's credible testimony, which is supported by copies of unanswered correspondence, that throughout the representation she never received any of the documents Plaintiff claimed to have. Thus, on this record, Mr. Negahbani has

demonstrated that Plaintiff's lack of responsiveness and cooperation in the prosecution of the case made continued representation and necessitated his withdrawal and amounted to a constructive discharge without cause.

At the conclusion of the evidentiary hearing, the Court afforded the parties an opportunity to confer on the question of the amount of the *quantum meruit* fee award and directed Mr. Negahbani to file a supplemental memorandum regarding the amount sought. The Court also afforded Plaintiff the opportunity to file a response in opposition to Mr. Negahbani's supplemental memorandum. Mr. Negahbani timely filed his memorandum, identifying the parties' agreement with respect to his rate and most of his hours and summarizing Plaintiff's objections expressed during their conferral (ECF No. 52). Plaintiff failed to file a responsive memorandum by the deadline set and has not sought an extension to file same.

   c. **Fee Award Determination**

Mr. Negahbani seeks payment of his fees for 32.89 hours of work expended on the prosecution of Plaintiff's employment discrimination case: 29.3 hours by Mr. Negahbani and 3.59 hours by Ms. Leiva at hourly rates of $425 and $100, respectively (ECF No. 52).

If a lawyer voluntarily withdraws from representation because the client's conduct makes the attorney's continued representation legally impossible, that attorney may be entitled to a fee in *quantum meruit*. In determining the proper *quantum meruit* award, the court must first determine the reasonable value of the services rendered by the discharged attorney. *Shackleford v. Sailor's Wharf, Inc.*, No. 8:15-CV-407-T-33TBM, 2018 WL 10373434, at *3 (M.D. Fla. Jan. 19, 2018), *aff'd*, 770 F. App'x 447 (11th Cir. 2019). In making that determination, the court must consider the "lodestar" factors, including the time reasonably devoted to representation and a reasonable hourly rate, as well as all relevant factors surrounding the professional relationship,

including the recovery sought, the skill demanded, the results obtained to ensure that the award is fair to both attorney and client. *Id*.

### 1. Mr. Negahbani Added Value to the Case

In this employment discrimination action, Plaintiff alleged that Defendant had terminated her employment because she was pregnant and had to occasionally leave early to attend doctor's appointments. In order to prosecute this action, Plaintiff was required to first exhaust her administrative remedies by filing a charge of discrimination with the EEOC. *Ramon v. AT & T Broadband*, 195 F. App'x 860, 865 (11th Cir. 2006). Mr. Negahbani initiated the EEOC charge and represented Plaintiff through the EEOC's investigation of her charge. As reflected by his time records, Mr. Negahbani investigated the factual basis for Plaintiff's charge, communicated regularly with the EEOC case mediator, and eventually entered into settlement negotiations with Defendant, although Plaintiff denied the initial settlement offer. Mr. Negahbani also reviewed Defendant's rebuttal of Plaintiff's claims, advised Plaintiff of his concern, and repeatedly sought additional information from Plaintiff to respond to Defendant. Mr. Negahbani was insistent that Plaintiff provide him information so as not to miss critical filing deadlines in both the EEOC case and the civil case filed in state court. Finally, while Plaintiff and her new counsel sought to minimize Mr. Negahbani's contribution to the case, it is apparent from the record that the settlement agreement ultimately reached was made possible, in part, by Mr. Negahbani's representation of Plaintiff through the EEOC investigation and initial portion of the civil case

### 2. Reasonable Hourly Rate

Mr. Negahbani seeks an hourly rate of $425 for his time and $100 for Ms. Leiva, the paralegal who worked on Plaintiff's case. Mr. Negahbani submitted his time sheets, which Ms. Leiva testified she kept contemporaneously. Plaintiff does not object to Mr. Negahbani's hourly

rate but challenges Ms. Leiva's rate and disputes that there was testimony in the record regarding Ms. Leiva's standard billing rate.

A reasonable hourly rate is defined by "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988). The fee applicant bears the burden of demonstrating that the rates charged are reasonable in the relevant legal community. *Id.* at 1299. The Court is deemed an expert on the issue of attorneys' fees and rates and "may consider its own knowledge and experience concerning reasonable and proper fees." *Id.* at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

Mr. Negahbani has been licensed to practice law since 1993 and accordingly, has 27 years of experience. Taking into account that Plaintiff does not dispute Mr. Negahbani's hourly rate and the Court's own knowledge and experience, I recognize that for an attorney of Mr. Negahbani's skill and experience in this market, an hourly rate of $425 is reasonable and consistent with the south Florida legal market. *See Attea v. Univ. of Miami (Miller Sch. of Med.),* No. 12-23933-CIV, 2015 WL 5921790, at *7 (S.D. Fla. Apr. 15, 2015), *report and recommendation adopted sub nom. Attea v. Univ. of Miami Miller Sch. of Med.,* No. 12-23933-CIV, 2015 WL 13376922 (S.D. Fla. May 13, 2015). The Court also notes that this hourly rate does not exceed the hourly rate permitted by the contingency fee agreement and is an appropriate rate for partners in the South Florida legal market. *Brickell E. Condo. Ass'n, Inc. v. Indian Harbor Ins. Co.,* No. 18-24791-CIV, 2020 WL 869725, at *4–5 (S.D. Fla. Jan. 10, 2020) (recognizing that when deciding a *quantum meruit* fee award, the contractual fee is the ceiling and not the amount the attorney should recover as a matter of right rather the court is required to determine the reasonable rate for similar attorneys in the same market).

Plaintiff disputes Ms. Leiva's hourly rate, arguing that $425 per hour is above–market, and contends that Mr. Negahbani failed to provide evidence supporting Ms. Leiva's standard hourly rate. Plaintiff's objections fail on both accounts. In his supplemental brief, Mr. Negahbani clarifies that he is seeking an hourly rate of $100, not $425, for Ms. Leiva's time (ECF No. 52). Moreover, Ms. Leiva testified that she had over 15 years of experience as a paralegal and her standard hourly rate is $100. Mr. Negahbani also admitted, without objection, time sheets reflecting the time spent on Ms. Leiva's tasks in this matter, which included drafting communications to Plaintiff, communicating directly with Plaintiff, and keeping the firm apprised of the status of the EEOC investigation. Upon consideration of Ms. Leiva's experience and work she performed in this matter; and based on the Court's independent experience, an hourly rate of $100 is reasonable for Ms. Leiva. *See Burgos v. SunTrust Bank, N.A.,* No. 13-21197-CIV, 2020 WL 2299937, at *9 (S.D. Fla. Mar. 31, 2020), *report and recommendation adopted,* No. 13-21197-CIV, 2020 WL 2299936 (S.D. Fla. May 7, 2020) (finding an hourly rate of $100 reasonable for a paralegal).

### 3. Numbers of Hours Reasonably Expended

Mr. Negahbani seeks payment of a total of 32.89 (29.3 hours for Mr. Negahbani and 3.59 hours for Ms. Leiva) hours expended on the prosecution of this litigation, which he supports with time records admitted during the evidentiary hearing. The supplemental brief notes that Plaintiff objects to two of Mr. Negahbani's billing entries on the basis that they are excessive: the time spent drafting the Complaint and the time spent reviewing emails and documents (ECF No. 52).

A fee applicant must set out the general subject matter of the time expended by the attorney "with sufficient particularity so that the court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Excessive, redundant, or otherwise unnecessary hours should be excluded from the amount claimed. *Id.* at 1301.

Upon review of the billing records and the objections identified in the supplemental memorandum, the Court will reduce Mr. Negahbani's time for writing the complaint and the time spent drafting interrogatories and request for production. Mr. Negahbani billed 5.30 hours to review his notes, conduct legal research, and write a four-page complaint. Plaintiff objects to the time billed for this task on the grounds that it is excessive. Considering that Mr. Negahbani was acutely familiar with Plaintiff's claims because he had represented her through the EEOC proceeding, the time spent reviewing notes and researching is disproportionate. The Court also notes that Plaintiff's complaint is similar to complaints filed by Mr. Negahbani in other employment discrimination cases,[4] except for the paragraphs identifying Defendant and the specific violations in this case, for these reasons, 5.30 hours is excessive and will be reduced to 1.0 hour. *See Access for the Disabled, Inc. v. CSM Properties P'ship*, No. 8:04CV1165T-24MAP, 2005 WL 1528662, at *2 (M.D. Fla. June 28, 2005). Additionally, three days after Mr. Negahbani's entry for reviewing the case file and drafting the complaint, counsel billed 4.45 hours for reviewing the case file again and drafting discovery. Likewise, taking into account Mr. Negahbani's familiarity with the case file and the review of the file he had done just three days prior, 4.45 hours is excessive and is reduced to 2 hours.

Accordingly, the following time, by category, is compensable to Mr. Negahbani: time spent investigating the basis of Plaintiff's claims (4 hours), representing plaintiff through the EEOC investigation, including attending mediation and settlement negotiations (14.14 hours), drafting the complaint (1.0 hour), and drafting discovery (2.0 hours), for a total of 21.14 hours. The remainder of Mr. Negahbani's time entries consist of secretarial or administrative tasks, including the review of emails and filings, some of which are duplicative of Ms. Leiva's time entries. The

---

[4] *See e.g. Epling v. Bi-Coastal Property*, 04-CV-20769 (ECF No. 1) (S.D. Fla. Apr. 1, 2004); *Romero v. Regions Financial Corporation/Regions Bank*, 18-CV-22126 (ECF No. 1) (S.D. Fla. May 29, 2018).

13

undersigned has not included these time entries in the lodestar calculation. *See Tiramisu Int'l LLC v. Clever Imports LLC*, 741 F. Supp. 2d 1279, 1297 (S.D. Fla. 2010).

Moreover, Ms. Leiva's time records support her significant efforts to communicate with Plaintiff and keep her appraised of the EEOC investigation and impeding deadlines, totaling 3.59 hours. Accordingly, the resulting lodestar calculation for Mr. Negahbani and Ms. Leiva's time is $9,343.50.

Upon consideration of the totality of the circumstances in this matter, the Court must examine whether an award of $9,343.50 is fair to both Mr. Negahbani and Plaintiff. *Brickell E. Condo*, 2020 WL 869725 at *3. The determination of whether the award is fair to both parties is within the court's discretion. *Id*. Here, Plaintiff constructively discharged Mr. Negahbani, without cause, after receiving the benefit of counsel's representation during the EEOC's investigation, which was necessary for her to initiate the underlying civil action, and the benefit of his settlement negotiations with opposing counsel, as well as his contribution to the initial phase of discovery. Thus, it is fair that Plaintiff compensate Mr. Negahbani for his efforts. To ensure that the amount awarded is fair to Plaintiff, the Court has considered Plaintiff's objections to reasonableness of the hours expended and reduced the time requested by Mr. Negahbani and considered all other relevant factors in this matter. *Id.* at *6. Therefore, the Court is satisfied that Mr. Negahbani's *quantum meruit* award is fair to both parties.

### 4. Costs

Mr. Negahbani also seeks $500 in costs constituting the filing fee in state court and Plaintiff does not object to counsel's entitlement to that cost (ECF No. 52). Costs are the responsibility of the client under Florida law and the representation agreement between the Parties, thus Mr. Negahbani is entitled to a charging lien for the costs incurred throughout his representation of

Plaintiff. *Kay v. Home Depot, Inc.,* 623 So. 2d 764, 767 (Fla. 5th DCA 1993) (awarding costs despite denying former counsel's motion to enforce charging lien).

## IV.   RECOMMENDATIONS

For the foregoing reasons, the undersigned respectfully recommends that Mr. Negahbani's Motion to Enforce Charging Lien (ECF No. 36) be **GRANTED** and that Mr. Negahbani be awarded attorney's fees in *quantum meruit* in the amount of $ 9,343.50 and costs in the amount of $500.

Pursuant to Local Magistrate Rule 4(b), the Parties have fourteen (14) days to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file objections by that date shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017).

**RESPECTFULLY SUBMITTED** in Chambers this 12th day of June 2020.

_____
LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE

Copies Furnished To:
The Honorable Federico A. Moreno
Counsel of Record
Mr. Sina Negahbani, Esq.